

T''IS CONSTITUTES NCTICE OF ENTRY
·· REQUIRED BY FRCP, RULE 77(d)ity
_____ Send
_____ Clsd
_____ Enter
_____ JS-5/JS-6
_____ JS-2/JS-3

ENTERED
CLERK, U.S. DISTRICT COURT

JUL 1 6 2002

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

FILED
CLERK, U.S. ... COURT

07-15-02

JUL 1 5

CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

MATTEL, INC.

    Plaintiff,

    v.

GREINER & HAUSSER; R.
HAUSSER; M.-L. HAUSSER

    Defendants.

CASE NO. CV 02-00322 NM (JWJx)

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS

_____ Docketed
_____ Copies / NTC Sent
_____ JS - 5 / JS - 6
_____ JS - 2 / JS - 3
_____ CLSD

## I. INTRODUCTION

Mattel, Inc. ("Mattel") initiated this action for declaratory and injunctive relief on January 11, 2002, against Greiner & Hausser GmbH ("G&H"), R. Hausser, and M.-L. Hausser ("Defendants"). This litigation and a related lawsuit in Germany ("German Action") both concern the parties' rights over the "Bild-Lilli" doll, a precursor to the popular "Barbie" doll. In its First Amended Complaint ("FAC"), Mattel seeks to enjoin Defendants from asserting "in any jurisdiction" any allegation or claim that Mattel has infringed or impaired any rights to or interest in the "Bild-Lilli" doll. FAC, ¶¶ 23, 27. Mattel also seeks a declaration that any claims Defendants may have against Mattel relating to the "Barbie" or "Bild-Lilli" dolls are barred by the doctrines of laches, waiver, release,

50

1  and estoppel.  FAC, ¶ 33.  This court previously denied Mattel's motion for a

2  preliminary injunction.  See Order Denying Plaintiff's Motion for Preliminary

3  Injunction, May 16, 2002.

4      Now pending before the court is Defendants' motion to dismiss Mattel's

5  First Amended Complaint ("FAC") on the grounds that: (1) this court lacks

6  personal jurisdiction over Defendants under Federal Rule of Civil Procedure

7  ("FRCP") 12(b)(2); (2) this court is an improper venue under FRCP 12(b)(3); (3)

8  the doctrine of *forum non-conveniens* should be applied in favor the German

9  Action; and (4) Mattel improperly seeks to use the Declaratory Judgment Act to

10  establish affirmative defenses to claims being litigated before another court.

## II. FACTS[1]

12      On March 24, 1961, G&H and Louis Marx & Co. ("Marx"), G&H's

13  exclusive American licensee, filed a complaint for patent infringement against

14  Mattel in United States District Court, Southern District of California, Central

15  Division (hereinafter "the 1961 California Action").  See Pruetz Decl., Ex. C.[2]

16  G&H and Marx alleged that Mattel was wilfully infringing G&H's U.S. Patent No.

17  2,925,684 for a doll hip joint.  Id.  Mattel filed an answer and a counterclaims for

18  declaratory relief and unfair competition.  Pruetz Decl., Ex. D at 73-76.

19      G&H and Marx subsequently filed a "counterclaim" against Mattel for

20  unfair competition, alleging that Mattel's Barbie dolls were a "direct take-off and

21  copy" of G&H's "Bild-Lilli" doll, and that Mattel falsely advertised and

22  represented that Mattel had "pioneered and originated the said doll design."

23  Pruetz Decl., Ex. E at 82.  Mattel followed by asserting amended counterclaims for

24

25

26      [1] The following facts are presumed to be true only for the purposes of this motion.

27      [2] "Pruetz Declaration" refers to attorney Adrian Pruetz's Declaration in Support of
Mattel's Motion for Preliminary Injunction which Mattel incorporates by reference in its

28  Opposition to the present motion.  Opposition at 2.

1  (1) declaratory judgment that G&H's patent was invalid and not infringed by

2  Mattel; (2) unfair competition, alleging that G&H and Marx conspired to compete

3  unfairly with Mattel by marketing an inferior doll of confusingly similar

4  appearance to Mattel's Barbie doll; and (3) patent infringement against Marx of

5  two Mattel toy gun patents.  Pruetz Decl., Ex. F at 90-95.

6       On March 4, 1963, Marx, G&H, and Mattel entered into a "Stipulation of

7  Dismissal," in which Mattel dismissed its infringement claims against G&H and

8  Marx, and G&H and Marx dismissed their copying claim against Mattel, with

9  prejudice.  Pruetz Decl., Ex. A at 5.  The stipulation stated that "Mattel's

10  Complaint and Counterclaims against defendant, and Defendant's Counterclaims

11  against plaintiff [are] dismissed with prejudice as to all causes of action raised by

12  said pleadings . . . ."  Id.

13       In 1964, Mattel approached G&H in Germany, and the parties entered into a

14  series of agreements by which Mattel obtained from G&H all rights to use and

15  reproduce the Bild Lilli doll worldwide, with the exception of the territories

16  licensed to Marx.  ("1964 License Agreements")  Pruetz Decl. Ex. B at 18-20, 48,

17  50-51; see also Motion at 6-7.  The Marx territories were automatically transferred

18  to Mattel upon expiration of G&H's contracts with Marx in July 1970.  Pruetz

19  Decl. Ex. B at 19.  These agreements were negotiated and signed in Germany and

20  contained the parties' stipulation that "[t]he place of jurisdiction is agreed to be

21  Coburg [Germany]."  Musgrave Decl., Ex. 2 at 11; Ex. 3 at 17; Ex. 4 at 21.

22       In 1999, Rolf Hausser initiated correspondence with the Mattel, attempting

23  in part to establish a friendly relationship between the parties.  The relationship

24  subsequently deteriorated into threats of litigation.  See, McShane Decl.,

25  Exs. B - F.

26       In May 2001, G&H filed suit in Germany against Mattel based on fraud

27  ("the German Action").  See Pruetz Decl., Ex. B.  In the German Action, G&H

28  claims it was defrauded into entering into the 1964 License Agreements with

3

1   Mattel through Mattel's alleged misrepresentation of sales figures for its Barbie

2   dolls, and that had G&H known the actual sales figures, it would have insisted on

3   being paid a royalty for every Barbie doll sold, rather than accepting a flat

4   payment. See Pruetz Decl., Ex. B at 11, 25. G&H seeks a declaratory judgment

5   that it is not bound by the 1964 License Agreements in which G&H granted Mattel

6   the rights of use for the "Bild-Lilli doll. Id. at 8, 32. G&H also seeks damages in

7   the form an appropriate royalty for every Barbie doll sold since 1964. Id. at 25.

8          In January 2002, Mattel initiated the current action for declaratory and

9   injunctive relief against Defendants, requesting that this court enjoin Defendants

10  from asserting in "any jurisdiction" any allegation or claim that Mattel has

11  infringed or impaired any rights to or interests in Defendants' "Bild-Lilli" doll.

12

13                              **III. ANALYSIS**

14                  **A. FRCP 12(b)(2): Personal Jurisdiction**

15         Defendants first argue that the amended complaint should be dismissed

16  pursuant to FRCP 12(b)(2) because this court lacks personal jurisdiction over

17  them. Motion at 9. In its Opposition, Mattel offers three bases justifying this

18  court's exercise of personal jurisdiction over Defendants: (1) Defendants'

19  participation in the 1961 California Action; (2) Defendants' contacts with

20  California; and (3) Defendants' national contacts pursuant to FRCP 4(k)(2). The

21  court finds that none of these bases support personal jurisdiction over Defendants.

22                      **1. The 1961 California Action**

23         Mattel argues that this court may exercise jurisdiction over Defendants

24  because Mattel purportedly seeks to enforce the judgment of dismissal entered in

25  the 1961 California Action. Opposition at 8. According to Mattel, the court's

26  "continuing jurisdiction has long been established and the minimum contacts

27  analysis does not apply." Id. Ordinarily, a party who chooses to litigate in a

28  district surrenders jurisdictional objections to other suits asserted against it

                                      4

1  "arising out of the same nucleus of operative facts."  General Contracting &

2  Trading Co. v. Interpole, Inc., 940 F.2d 20, 24 (1st Cir. 1991).  Such exercise of

3  personal jurisdiction must, however, comport with the principles of due process.

4  Id. at 22.

5       Mattel attempts to meet its jurisdictional burden by characterizing this

6  action as one to enforce the court's judgment of dismissal of the 1961 California

7  Action.  The dismissal of the 1961 California Action, however, is not at issue.

8  Defendants do not challenge the validity of the dismissal.  Nor do they assert in

9  the German Action either the "copying" or patent infringement claims of the 1961

10  California Action.  Rather, they sue for fraud, based on Mattel's alleged

11  misrepresentations in the Germany-based negotiations for the 1964 License

12  Agreements - conduct that post-dated dismissal of the 1961 California Action.

13  There is nothing in the judgment of dismissal to enforce, and it forms no basis for

14  the exercise of this court's jurisdiction.[3]  Moreover, as set forth below, even were

15  Mattel seeking to "enforce" the dismissal of the 1961 California Action, the

16  exercise of jurisdiction over these Defendants some 40 years later would violate

17  due process.  See discussion infra.

18                    **2. Specific Jurisdiction**

19       Alternatively, Mattel argues that this court may exercise personal

20  jurisdiction based on a "minimum contacts" analysis.  Opposition at 10-14.  For a

21  court to have personal jurisdiction over a defendant, due process requires that the

22  defendant have sufficient minimum contacts with the forum that the maintenance

23  of the lawsuit does not offend "traditional notions of fair play and substantial

24

25  _____

26       [3] Mattel's own complaint contradicts its assertion that it seeks only to enforce the
     judgment of dismissal of the 1961 California Action.  In its First Amended Complaint, it asserts
27  rights arising in part out of the 1964 Licensing Agreements - rights already being litigated before
     a German court.  FAC, ¶ 31.  If, as Mattel claims, it has affirmative defenses to Defendants'
28  fraud claims, the place to raise them is in the ongoing German Action.

                                   5

1   justice." <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).[4]  The

2   plaintiff bears the burden of establishing personal jurisdiction.  <u>Omeluk</u>, 52 F.3d at

3   269.  If a non-resident defendant raises the issue of a court's lack of personal

4   jurisdiction, the burden shifts to the plaintiff to establish a *prima facie* showing of

5   jurisdictional facts.  <u>Id.</u> at 268.  A plaintiff may do so by establishing that a court

6   has either general or specific jurisdiction over the defendant.

7        Mattel contends that the court has specific jurisdiction over Defendants.

8   Opposition at 10-18.[5]  Specific jurisdiction exists when: (1) the defendant

9   purposely availed himself of the privilege of conducting activities in the forum

10  state, thereby invoking the benefits and protections of its laws; (2) the claim arises

11  from the defendant's forum-related activities; and (3) the exercise of jurisdiction is

12  reasonable.  <u>Ziegler v. Indian River County</u>, 64 F.3d 470, 473 (9th Cir. 1995).

13       Mattel argues that Defendants have purposely availed themselves of the

14  privilege of conducting activities in the forum state.  According to Plaintiff,

15  Defendants' contacts within California include: (1) attempting to compete with

16  Mattel by entering into an agency relationship with Marx prior to the 1961

17  California Action; (2) filing the 1961 California Action; (3) entering into the 1964

18  Licensing Agreements in Germany with Mattel, a California-based company;

19  (4) reviving contact between the two parties in 1999 either to renew a business

20  relationship or to threaten litigation; and (5) hiring American counsel.  Such a

21  scant record of contacts does not constitute purposeful availment of the

22

23       [4] In addition to the requirements of due process, an exercise of personal jurisdiction over
24  a non-resident must comport with the relevant long-arm statute.  <u>Omeluk v. Langsten Slip &</u>
     <u>Batbyggeri</u>, 52 F.3d 267, 269 (9th Cir. 1995).  It is the practice of federal courts to use the long-
25  arm statute of the forum state.  <u>Id.</u> California's long-arm statute extends this court's jurisdiction
     to the limits imposed by the Due Process Clause.  CAL. CIV PROC. CODE § 410.10.
26

27       [5] Mattel does not suggest that Defendants have the kind of "substantial" or "continuous
     and systematic" contacts with California to support general jurisdiction.  <u>Bancroft & Masters v.</u>
28  <u>Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000).

1 | protections of California.

2 | The only contact which might constitute purposeful availment is

3 | Defendants' initiation of the 1961 California Action.[6] However, this contact

4 | occurred over four decades ago. The Ninth Circuit has held that prior litigation

5 | within the forum state alone is not a sufficient basis for specific jurisdiction. <u>See</u>

6 | <u>Threlkeld v. Tucker</u>, 496 F.2d 1101, 1104 (9th Cir. 1974). Instead, "[t]here must

7 | be a history of relevant contacts between the nonresident defendant and the

8 | state...[which] must not have been weakened by the passage of time." <u>Id.</u> The

9 | other contacts with California initiated by Defendants, such as selling some dolls

10 | through Marx over 30 years ago, entering into the 1964 Licensing Agreements in

11 | Germany, and sending letters to Mattel in 1999, do not adequately supplement the

12 | 1961 California Action sufficiently to constitute "purposeful availment." <u>See,</u>

13 | <u>e.g.</u>, <u>Glencore Grain</u>, 284 F.3d at 1124-25 (sending several shipments to California

14 | not sufficient for "purposeful availment"); <u>Peterson v. Kennedy</u>, 771 F.2d 1244,

15 | 1262 (9th Cir. 1985) ("Both this court and the courts of California have concluded

16 | that ordinarily use of the mails, telephone, or other international communications

17 | simply do not qualify as purposeful activity invoking the benefits and protection

18 | of the [forum] state") (internal quotations omitted); <u>Cascade v. Hiab-Foco AB</u>, 619

19 | F.2d 36 (9th Cir. 1980) (nonresident defendant's sending of several cease and

20 | desist letters to resident does not subject nonresident to specific jurisdiction);

21 | <u>Douglas Furniture Co. v. Wood Dimensions, Inc.</u>, 963 F. Supp. 899 (C.D. Cal.

22 | 1997) (same).

23 | Finally, Defendants' initiation of the German Action does not, as Mattel

24 | asserts, constitute a contact with California for purposes of establishing personal

25 | jurisdiction. <u>Compare</u> <u>Yahoo!, Inc. v. La Ligue Contre le Racisme et</u>

26 | <u>l'Antisemitisme</u>, 145 F. Supp. 2d 1168 (N.D. Cal. 2001) (initiation of foreign suit

27 |

28 | [6] Margarethe Hausser was not a party to the 1961 California Action. Motion at 3.

1  constituted contact where (a) foreign judgment would require plaintiff "to perform

2  specific physical acts" in California; and (b) enforcement of foreign order would

3  violate plaintiff's First Amendment rights in U.S.).

4      In short, Mattel's claim does not arise out of Defendants' previous contact

5  with the forum state, as there is no actual controversy regarding the dismissal of

6  the 1961 California Action.  Defendants' other contacts with this forum either

7  occurred too long ago or were too insubstantial to constitute the minimum contacts

8  necessary to support the exercise of specific jurisdiction.

9                **3. Jurisdiction under FRCP 4(k)(2)**

10     Alternatively, Mattel argues that this court may exercise jurisdiction over

11  Defendants under the federal long arm statute found in FRCP 4(k)(2).  Opposition

12  at 14.  Under FRCP 4(k)(2), a federal court may exercise jurisdiction over a

13  foreign defendant when: (1) the cause of action arises under federal law; (2) the

14  defendant is not subject to the personal jurisdiction of *any* state court of general

15  jurisdiction; and (3) the federal court's exercise of personal jurisdiction comports

16  with due process.  Glencore Grain, 284 F.3d at 1126.  FRCP 4(k)(2) eliminates a

17  potential loophole in the personal jurisdiction scheme that would allow a foreign

18  defendant with sufficient contacts with the U.S. to evade enforcement of federal

19  law because its contacts were too spread out to support personal jurisdiction in any

20  one district.  R. Griggs Group Ltd. v. Consol. Shoe, Inc., 1999 WL 22621, at * 2

21  (N.D. Cal. April 9, 1999); citing Fed. R. Civ. P. 4(k)(2) advisory committee note.

22     Mattel argues that as its complaint arises out of federal law, the Copyright

23  Act, the first FRCP 4(k)(2) factor is satisfied.  Opposition at 14.  Defendants

24  contend, however, that it would be improper for this court to justify its exercise of

25  jurisdiction based on the Copyright Act, because a federal court may not apply the

26  Copyright Act beyond the territorial limits of U.S. sovereignty.  Reply at 10.   The

27  court need not decide the impact of the jurisdictional limit of the Copyright Act on

28  the "federal law" requirement of Rule 4(k)(2), because exercising jurisdiction

                                    8

1  under Rule 4(k)(2) is inappropriate on other grounds.

2        Under the evidence submitted to the court, it does not appear that

3  Defendants are subject to the personal jurisdiction of any state court of general

4  jurisdiction.  Mattel has failed, however, to establish that Defendants have

5  "significant nationwide contacts" justifying the exercise of jurisdiction under

6  FRCP 4(k)(2).  As noted above, Defendants' contacts within California have been

7  neither significant nor continuous.  There are no significant contacts added to the

8  analysis if the geographic range is expanded to the United States.  Accordingly, an

9  exercise of FRCP 4(k)(2) jurisdiction would not satisfy the requirements of due

10  process.  See, e.g., Glencore Grain, 284 F.3d at 1126-27 (defendant's regular

11  shipments of product into U.S. to be sold through its agent insufficient to justify

12  FRCP 4(k)(2) jurisdiction); American Telephone & Telegraph Co. v. Compagnie

13  Bruxelles Lambert, 94 F.3d 586, 590 (defendant employee's attendance at board

14  of directors meetings in U.S. insufficient to justify FRCP 4(k)(2) jurisdiction).

15              **4. Reasonableness of an Exercise of Personal Jurisdiction**

16        Even if a defendant's number of contacts with the forum state is sufficient, a

17  court must analyze whether the exercise of personal jurisdiction is "reasonable"

18  using the seven factors announced by the Supreme Court in Burger King Corp. v.

19  Rudzewicz, 471 U.S. 462 (1985): (1) the extent of the defendant's purposeful

20  interjection into the forum state's affairs; (2) the burden on the defendant of

21  defending in the forum; (3) the extent of conflict with the sovereignty of the

22  defendant's home state; (4) the forum state's interest in adjudicating the dispute;

23  (5) the most efficient judicial resolution of the controversy; (6) the importance of

24  the forum to the plaintiff's interests in convenient and effective relief; and (7) the

25  existence of an alternative forum.  Glencore Grain Rotterdam, 284 F.3d at 1125.

26  An examination of the factors as applied to the present suit compels the conclusion

27  that any exercise of personal jurisdiction over Defendants would be unreasonable.

28

1      (1) ***Extent of Defendants' Purposeful Interjection into California***: The

2  limited extent of Defendants' "purposeful interjection" into California favors

3  dismissal.  There are only two contacts that arguably constitute "purposeful

4  interjection" into California.  The first is the 1961 California Action.  As noted

5  above, however, "purposeful interjection" cannot be established by the filing and

6  dismissal of a lawsuit over 40 years ago.  The other contact is Defendants' sale of

7  "Bild-Lilli" dolls in California through Marx.  This contact, however, is also

8  significantly "stale" for it occurred over 30 years ago.

9      (2) ***The Burden on Defendants of Defending in California***: The burden on

10  Defendants of defending this suit in California is high.  G&H is a company

11  currently in liquidation proceedings in Germany.  The two individual defendants

12  are German citizens, one of whom is 93 years old; the other was not a party to the

13  1961 California Action.  There is no evidence presented by Mattel that either

14  individual has been in California at any time.  Furthermore, Defendants are

15  currently litigating the German Action in Germany.  Requiring them to defend this

16  suit while attempting to litigate concurrently in Germany would interfere with

17  their ability to prosecute their claims in the German forum.

18      (3) ***The Extent of Conflict with the Sovereignty of Germany***: The current

19  action would certainly conflict with the sovereignty of the German courts.  The

20  Ninth Circuit has held that when the defendant is foreign and there is a potential

21  conflict with another nation's sovereignty, "the sovereignty barrier is high and

22  undermines the reasonableness of personal jurisdiction."  Amoco Egypt Oil Co. v.

23  Leonis Navigation Co., Inc., 1 F.3d 848, 852 (9th Cir. 1993), as quoted in,

24  Glencore Grain, 284 F.3d at 1126 (dismissing case on personal jurisdiction

25  grounds in favor of previously filed litigation in India or alternatively arbitration

26  in England as provided for in a contract negotiated in England by the parties).

27  Any attempt by this court to adjudicate Mattel's potential affirmative defenses to

28  litigation pending in Germany would necessarily interfere with the German Action

1    and undermine the integrity of the German courts.

2    (4) *California's Interest in Adjudicating the Dispute*: California's interest

3    in adjudicating this dispute is non-existent.  Because Defendants are not

4    attempting to relitigate the 1961 California Action in the German Action, there is

5    no need for this court to protect the integrity of a judgment entered some 40 years

6    ago.

7    (5) *The Most Efficient Resolution of the Dispute*: The most efficient

8    resolution of the dispute clearly favors dismissal in favor of the previously-filed

9    German Action.  Were this case to proceed, the parties would be required to

10   inconveniently litigate two related actions in two different nations.  Additionally,

11   two courts, half a world away, would be required to expend resources adjudicating

12   facts and issues that could and should be resolved in a single proceeding.

13   (6) *The Importance of the Forum to Mattel's Interests in Convenient and*

14   *Effective Relief*: The importance of this forum to Mattel's interests is minimal.

15   Although it might be more convenient for Mattel to litigate in California, Mattel is

16   not only an international corporation, but the "largest independent manufacturer of

17   toys, dolls and die-cast vehicles in the world."  FAC, ¶ 9.  Mattel is already

18   defending itself in the German Action, in accordance with a forum selection clause

19   it negotiated with Defendants in Germany.  If anything, litigating in both

20   California and Germany is less convenient for both parties.[7]

21   (7) *The Existence of an Alternative Forum*: Germany is an alternative

22   forum in which Mattel may raise its affirmative defenses of res judicata, collateral

23   estoppel, laches, waiver, and release to Defendants' claims of fraud in the

24   negotiation of the 1964 Licensing Agreements.  Germany is the forum to which

26   [7] Because Mattel is already litigating the German Action, it appears its choice of this
27   forum is less of a question of convenience to Mattel than of inconvenience to G&H, its
     nonagenarian former director, and his wife, who was never a party to the 1961 California Action.

11

1  Mattel agreed in the 1964 Agreements negotiated and signed in Germany.

2  Furthermore, litigation is already pending in Germany, and Mattel is actively

3  defending itself there.

4      Accordingly, the court finds that any exercise of personal jurisdiction over

5  Defendants is unreasonable.  The court GRANTS Defendant's motion for

6  dismissal based on lack personal jurisdiction pursuant to FRCP 12(b)(2).[8]

7

8  ## B. FRCP 12(b)(3): Improper Venue

9      Defendants assert that this court is an improper venue for this litigation,

10  because the 1964 Licensing Agreements, negotiated and signed in Germany,

11  expressly designate Coburg, Germany in their forum selection clauses.  Motion at

12  18.  The forum selection clause in each of the 1964 License Agreements provides:

13  "The place of jurisdiction is agreed to be Coburg."  Decl. of R. Kenton Musgrave,

14  Ex. 2 at 11, Ex. 3 at 17, Ex. 4 at 21.

15      Mattel first contends that the forum selection clause of the 1964 License

16  Agreements should not be determinative, because Mattel's claims supposedly do

17  not arise out of the 1964 Agreement.  Opposition at 18.  As noted above, this  is

18  not an accurate characterization of the present suit.  Additionally, because Mattel

19  is in fact attempting to establish potential affirmative defenses to the German

20  Action brought under the 1964 Licensing Agreements, the court finds the forum

21  selection clauses applicable to the current action.

22      Alternatively, Mattel argues that the forum selection clause in the 1964

23  License Agreements is permissive rather than mandatory.  Opposition at 19.  For a

24  forum selection clause to be mandatory, "a clause must contain language that

25  clearly designates a forum as the exclusive one."  Northern California District

26  _____

27     [8] Although the court holds that the case should be dismissed pursuant to FRPC 12(b)(2),
Defendants raised other grounds for dismissal.  Because they provide alternative grounds for its

28  decision, the court addresses those arguments below.

1  Council of Laborers v. Pittsburg-Des Moines Steel Co., 69 F.3d 1034, 1037 (9th
2  Cir. 1995). Mattel argues that "[t]he place of jurisdiction is agreed to be Coburg"
3  does not sufficiently specify that Germany has exclusive jurisdiction over matters
4  arising from the 1964 License Agreements. Instead, it merely signifies that Mattel
5  consented to submit to the jurisdiction of a German court should a suit be brought
6  there against it. Opposition at 20-21.

7        This argument disregards the well-established deference owed to forum
8  selection clauses in international agreements. See, e.g., Scherk v. Alberto-Culver
9  Co., 417 U.S. 506, 516-17 (1974) (the refusal of the court of one nation to honor a
10  forum selection clause "would invite unseemly and mutually destructive jockeying
11  by the parties to secure tactical litigation advantages."); M/S Bremen v. Zapata
12  Off-Shore Co., 407 U.S. 1, 13-14 (1972) ("The elimination of [jurisdictional]
13  uncertainties by agreeing on a forum acceptable to both parties is an indispensable
14  element in international trade, commerce, and contracting."); Richards v. Lloyd's
15  of London, 135 F.3d 1289, 1294 (9th Cir. 1998) (accord). Mattel, a highly
16  sophisticated party, negotiated the forum selection clauses in Germany, and
17  "agreed" that the "jurisdiction" for disputes arising under the agreements was to be
18  Coburg, Germany. Deference to international comity warrants holding Mattel to
19  its agreement. Accordingly, as an alternative basis for its decision, the court
20  GRANTS Defendants' motion to dismiss this action for improper venue FRCP
21  12(b)(3).

22

23                    **C. *Forum Non-Conveniens***

24        Defendants also argue that this court should dismiss the present action in
25  favor of the German Action under the doctrine of *forum non-conveniens*. Motion
26  at 20-24. The determination whether a case should be dismissed under *forum non-*
27  *conveniens* is "committed to the sound discretion of the trial court." Piper Aircraft
28  Co. v. Reyno, 454 U.S. 235, 257 (1981).   In making its determination, a court

should determine whether: (1) there is an adequate alternative forum; and (2) the private and public interests involved in the case weigh in favor of resolving the parties' dispute in the alternative forum. Lockman Foundation v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991).  Although there is less deference to a foreign plaintiff's choice of forum, a "citizen's forum choice should not be given dispositive weight."  Id.  "[I]f the balance of convenience suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  Id., quoting Piper Aircraft, 454 U.S. at 256 n.23.

### 1. Adequate Alternative Forum

Defendants bear the burden of proving an alternative forum.  The requirement of an adequate alternative forum is usually fulfilled when the defendant is amenable to process in the other jurisdiction.  Id. At 768.  A court should *not* give substantial weight to the possibility of a change in law.  Piper Aircraft, 252 U.S. at 250.  ("[I]f conclusive or substantial weight were given to the possibility of a change in law, the *forum non-conveniens* doctrine would become virtually useless.")

The German court currently hearing the German Action is an adequate alternative forum.  Because D&H is a German company and the Haussers are German citizens, Defendants are clearly amenable to process in Germany. Additionally, they have already filed a suit against Mattel in Germany.  There is no evidence suggesting the German court is incompetent to determine Mattel's rights in the pending litigation, including any affirmative defenses Mattel may have. Indeed, Mattel acknowledges that it is opposing Defendants' fraud claim "on the merits" and has not challenged the jurisdiction of the German court.  Opposition at 7.

## 2. Private and Public Interests

After determining that the alternative forum is adequate, the court must then determine whether private and public interests weigh in favor of dismissing the action on *forum non-conveniens* grounds. <u>Lockman Foundation</u>, 930 F.2d at 769. Both public and private interests clearly weigh in favor of dismissing the suit.

### a. *Private Interest Factors*

In examining the private interests, a court may consider: (1) ease of access to sources of proof; (2) compulsory process to obtain the attendance of hostile witnesses; (3) the cost of transporting friendly witnesses; and (4) other problems that interfere with an expeditious trial. <u>Id.</u>, quoting <u>Contact Lumber Co. v. P.T. Moges Shipping Co.</u>, 918 F.2d 1446, 1451 (9th Cir. 1990) (internal quotations omitted). In the current action, the private interests favor dismissal. Mattel cannot contend that litigating in Germany - as it is already doing - deprives it of access to any sources of proof or prevents it from obtaining the testimony of necessary witnesses. As Mattel is defending the German Action on the merits, any additional cost of asserting potential affirmative defenses in that action will be minimal. Moreover, although Mattel is headquartered in California, it is an international corporation with business operations within Germany. Indeed, Mattel is the largest independent toy and doll manufacturer on the face of the planet. FAC, ¶ 9. Defendants are two German individuals, one of whom is 93 years old, and a small German corporation currently involved in liquidation proceedings in Germany. McShane Decl., Ex. F. In short, any additional burden on Mattel would be minimal, while the burden on Defendants - German citizens and residents with no significant contacts in this country - would be enormous.

Most important, the parties have been involved in the German Action for over a year. While Mattel does not directly seek to enjoin the German Action, it is clear that any adjudication of issues relating to Mattel's affirmative defenses would necessarily interfere with an expeditious resolution of the German Action.

15

1    Unless an interest in disrupting or delaying ongoing foreign litigation is worthy of

2    consideration, no private interest whatsoever favors concurrent litigation in two

3    foreign forums.

4                                        **b. *Public Interests***

5           In examining the public interests at issue, a court may examine: (1) court

6    congestion; (2) local interest in resolving the controversy; and (3) the preference

7    for having a forum apply a law with which it is familiar. Lockman Foundation,

8    930 F.2d at 771. The public interests favor dismissal. The docket of this court is

9    among the most congested in the nation. See Pagtalunan v. Galaza, 291 F.3d 639,

10   644 (9th Cir. 2002) (Trott, J. concurring). While the court has an interest in

11   upholding a judgment entered in this district, it has no less an obligation to dismiss

12   duplicative claims to preserve its limited resources. Furthermore, Germany has a

13   far stronger interest in this action. Despite Mattel's characterization of the current

14   action, its intent is for this court to interfere with the German Action through an

15   injunctive order that will ultimately affect the course of the German Action. The

16   German court clearly has an interest in the outcome of the German Action, for the

17   1964 License Agreements were negotiated and executed in Germany, the allegedly

18   fraudulent conduct occurred in Germany, and the parties agreed on Germany as

19   the place of jurisdiction. The familiarity of this court with United States copyright

20   law is irrelevant, as Defendants have neither challenged the validity of the 1961

21   dismissal nor raised a "copying" claim in the German Action.

22          It is clear that both private and public factors favor resolving this case in

23   Germany. It is equally clear that the German courts provide an adequate

24   alternative forum for Mattel to raise its proposed affirmative defenses.

25   Accordingly, as an alternative basis for its decision, the court GRANTS

26   Defendants' motion to dismiss under the doctrine of *forum non-conveniens* in

27   favor of the German Action.

28

                                              16

**D. The Appropriateness of Declaratory Relief**

1
2        Defendants argue that Mattel's request for a declaratory judgment is
3   improper. Motion at 24-25. Defendants assert that Mattel is asking this court to
4   adjudicate the affirmative defenses of res judicata, collateral estoppel, statutes of
5   limitations, laches, and waivers, which Mattel may assert against Defendants in
6   the German Action. Id. at 25. See also, Opposition at 24-25. The court agrees.
7        A declaratory judgment is appropriate to clarify the legal relationships
8   whose uncertainty creates an "actual controversy" that has not yet reached a stage
9   at which either party may seek a coercive remedy and in cases where a party who
10  could sue for coercive relief has not yet done so. Seattle Audubon Society v.
11  Moseley, 80 F.3d 1401, 1405 (9th Cir. 1996); 28 U.S.C. § 2201. The purpose of
12  the Declaratory Judgment Act is to "allow earlier access to federal courts in order
13  to spare potential defendants from the threat of impending litigation." Seattle
14  Audubon, 80 F.3d at 1405. Mattel has been sued for coercive relief in the German
15  action, and such suit was brought before Mattel filed the present action seeking
16  declaratory relief. Moreover, as explained above, there is no "actual controversy"
17  other than the German Action between the parties that can be characterized as
18  "substantial" and "of sufficient immediacy and reality" to satisfy the requirements
19  of the Declaratory Judgment Act. See 28 U.S.C. § 2201; Seattle Audubon, 80 F.3d
20  at 1405 (quoting National Basketball Ass'n v. SDC Basketball Club, 815 F.2d
21  562, 565 (9th Cir. 1985)).
22       Furthermore, it is inappropriate for Mattel to attempt to use declaratory relief
23  to establish defenses to claims pending in a separate case in another forum. 10B
24  Wright, et. al., Federal Practice and Procedure 3d, § 2758 at 519 (1998). Mattel's
25  claim that it is merely seeking "a declaration that defendants have no right to
26  pursue Mattel for 'copying' under any theory or circumstance, owing in part to the
27  judgment in the 1961 California Action" is disingenuous. Opposition at 24.
28  Defendants have not sued Mattel for "copying" or any other claim asserted in the

1961 California Action.  Nor have Defendants challenged the dismissal of the 1961 California Action.  They have sued Mattel for fraud arising out of the post-dismissal negotiations in Germany of the 1964 License Agreements.  Contrary to its assertion, Mattel is clearly attempting to establish potential affirmative defenses - including res judicata and collateral estoppel - to the pending German Action.  Mattel's attempt to use the Declaratory Judgment Act to invoke this court's jurisdiction is improper.  Accordingly, the action must be DISMISSED.

### IV. CONCLUSION

The Court finds as follows:

(1) This court lacks personal jurisdiction over Defendants.  FRCP 12(b)(2).

(2) The Central District of California is an improper venue.  FRCP 12(b)(3).

(3) The doctrine of *forum non-conveniens* warrants dismissal of this action.

(4) This action is an improper use of the Declaratory Judgment Act, 28 U.S.C. § 2201.

For each of the foregoing reasons, Defendants Motion to Dismiss is GRANTED.  This action is dismissed with prejudice.

DATED:  July 15, 2002

Nora M. Manella
United States District Judge

18